May it please the court. I want to point out a few of the surrounding facts regarding the arguments that are laid out in the briefs, rather than just recite what's in the briefs, because I know the court's well aware of what's there. First, in this case, under Rule 16, there was no violation of the rule. Second, if in fact the court found that there was a violation, it clearly was not willful, and the sanction was drastic and severe in this case, and was not called for. And finally, any error was not harmless, because the evidence that was sought to be presented was relevant and crucial to the defense. How do we review the judge's decision to exclude this witness? Under what standard of review? Abusive discretion would be the standard for excluding the witness, I believe. So tell me why the judge in this case, with a witness first disclosed on the next to last day of trial, abused discretion in excluding the witness? Well, it was on the next to the last day of the government's case. Okay. I don't know that the trial was anticipated at that point to be concluded. But it actually, we know later that it actually concluded. Because the defense didn't put on as many witnesses as expected. I think you have to go, I think it's twofold. One is what occurred at the time of the disclosure. And what's mentioned in the record is that the defense sought to introduce Senate hearing transcripts regarding the mortgage fraud aspect of this case. This case involved money laundering with an underlying illegality of mortgage fraud. The court refused to admit that evidence. On cross-examination of Washington Mutual's custodian records, much information came out about the whole mortgage fraud debacle and the incentives and directives that the mortgage companies were giving to their brokers, which was relevant to Ms. Fard at the time and all the refinances. Warren was sought out originally for that purpose. What happened is during the trial, the defense sought more clarification of Agent Sal's testimony. There was no report. There was just this one-page letter indicating that she was going to talk about tax violations. It didn't indicate which ones, conclusions about whether or not Ms. Fard presented false information of that nature. At trial, it became clear that she was also cooperating. Just a minute before you go further. As I understood it, when the government filed its notice of intent to use the expert testimony, the government suggested that the expert would testify about the civil examination of the defendant, the later stage of the criminal investigation, which this agent was involved in, the general accounting practices with respect to personal income taxes, the tax preparation, the treatment of the returns by the IRS, and the financial records. That's what they say. Correct. So in my estimation, if they got outside of that, then I say there's something else. But I couldn't find that they got outside of that. I think the key revelation was that this agent was also the cooperating agent. But in fact, they did say they're going to talk about the later stage of the investigation. But there was no indication that she was the cooperating agent. And then when she was cross-examined about that role, it became clear she had no idea what the policies or procedures were for a cooperating agent. She appeared unqualified and didn't know what she was supposed to be doing. It became apparent that they were using a civil investigation for several years, at least two years, gathering information against Ms. Fard, and then turned the civil agent into a cooperating agent. She had never been one before. That's what triggered the need for Mr. – well, what triggered the need was Mr. Warren contacting the defense and indicating that he also had a tax background, discussing Agent Sue's testimony and realizing that he could provide testimony regarding the policies and procedures of both civil and criminal investigators with the IRS. Well, then there are other facts that are some concerning to me, and that is that on October 13, you file a motion in limine. And it suggests failed to sufficiently outline the agent's opinions, failed to identify the specific tax years, failing to give the notice. The notice, I think, was given, but now you're trying to explain that, I guess. Then it seems as if, based on that motion in October, you get funding on November 16, but you don't do anything about it until we're in the trial and we're just about done with the government's case, and then you give notice. If you look in the transcripts, there was a request for funding, but an expert won't consult with you until they have approval that they'll be funded. Well, but you got the funding on November 16, didn't you? And if you look in the record, you'll see that the expert, it was not at the rate the expert requested, and he did not agree to work at that rate until after the weekend. There was discussions back and forth. Why don't you at least, and maybe I'm lamenting from the perspective of a trial judge, why don't you tell the judge, the week before at least, judge, we're thinking of getting an expert to put on to deal with this testimony. We haven't finalized things yet, but I want to let you know. So the judge doesn't get a request for a new witness, what turns out to be the next to last day of trial. Well, we thought of putting him on as the mortgage fraud, and then when we were able to get what we needed from the custodian, the app was in and it got approval. No, I'm not questioning when you wanted to put him on or for what topics. I guess my question is, shouldn't you, under this circumstance, when you know for about a week beforehand that you're contemplating putting on a witness you haven't disclosed before this, to let the other side and the judge know that this witness might be coming and what he might be testifying about, so that everybody has some previous notice of what might happen. Here it just gets sprung on the judge at the last minute. Well, but to be honest with you, the app was pending for some period of time, and the application was put in for a mortgage fraud expert. It became clear that we didn't need a mortgage fraud expert, so there would be no intention of the defense to alert the court. Also, we hadn't consulted with him yet. He hadn't told us any opinions. So to say we might call this expert, which the defense intended not to call on the mortgage issue. What happened is he showed up at court because he was curious and he wanted to find out about the order, and we went to lunch talking about Sal's testimony, and that's when he offered his other area of expertise. Can you turn to the second part of your argument? One second about the timing. You got the approval to hire him on November 16th. When was the day you went to lunch? I believe it was Monday or Tuesday of the following week. Over the weekend, there was a negotiation about the rate, the hourly rate, because he didn't want to work for the CJA rate. So when you got the approval to hire him, was that the first? When did you first know you wanted to hire him? I knew I wanted to consult with him regarding mortgage fraud weeks before we got the approval. When we got the approval, I no longer wanted to call him for mortgage fraud. I wasn't even going to call him. He was persistent and showed up at the courthouse. I'm going to run out of time. He then explained that he had relevant expertise in the area of Sal's testimony, that he had been a tax investigator for 20-some years, and that he could talk about the policies and procedures that she couldn't even understand on cross-examination. I want you to get to that. If you've answered Judge Reithart, and I'll finish your answer to him, but if you've answered him, tell me why this testimony would have probably changed the result. She was the penultimate witness in the government's case that tied everything together. It was a very confusing and convoluted case. She sat with Ms. Fard for two years. She testified about her impression. Well, I understand about her, but I've looked at the proffer of his testimony. It would have undermined her credibility because she didn't keep copies of records. She would say that Ms. Fard didn't present all the documents. That implies to the jury that she's hiding something. My question is, he wasn't going to opine that your clients hadn't done anything here or that what they'd done was innocent. He was going to opine that the record-keeping by the government wasn't good, right? The investigation by the government was not adequate. And they used that investigator, Sal, not only just to talk about the investigation, but she gave all kinds of conclusions about the filings and about Ms. Fard and about whether 1031 exchanges were done and things like that. So it wasn't just about the... So my question is on that. Wasn't that a central part of her testimony, what your clients had done and the consequence of it, really disclosed very early? Disclosed early in the trial? It was disclosed beforehand at the motion and limiting stage. Not through Sal. We got summaries during trial. So, no. There's no report. There's nothing more than that document. And there were thousands, hundreds of thousands of pages of documents. Now, I'm not talking about the documents. Didn't the government say before trial, and we intend to put on... Judge Smith was reading it. We intend to put on an expert to talk about the following topics. Those are the topics on which you were going to seek to impeach her, were they not? But it covered seven years of tax issues without delineating which issues, which part of the tax did you have problems with, the properties, the jewelry, the income? There was no indication. And then there was no... And we couldn't refute the fact that she said that Ms. Farr didn't provide her documents when she didn't keep a record of it. She didn't keep copies of anything. You did impeach her about that, didn't you? We tried. But I think that if it would have been shown by an expert that she didn't do her job the way she was supposed to, that would have undermined her credibility. And I think she pulled everything together for the jury in this case. Well, in reading what you did to try to impeach her, it seemed to me that you pointed that particular issue out pretty respectfully. Really good. I mean, I was tough to say whether just another person getting up and saying it wasn't right or not was going to make any difference. I think someone with a government background of 20-some years who worked for the same agency this woman worked for, I think it would have brought more credibility than a defense lawyer vigorously cross-examining her. And I think the fact that she didn't follow the policies and procedures. And you have to realize the civil investigation of a criminal, there's very specific rules so that they don't infringe on an individual's rights, their Fifth Amendment right, and ask them for documents and all kinds of things in an effort just to correct a tax inaccuracy, as opposed to a criminal investigation where you're investigating whether or not she deliberately intended to defraud the government. And this woman switched gears without us ever knowing it until she testified. We never knew she was the cooperating agent. We were wondering why they didn't have a cooperating agent in the case. And it came out on cross-examination. That lunch was immediately after that testimony when Mr. Warren showed up and said, hey, I can help you on this. Let me tell you why. So I don't think there was any violation. I think the sanction was too harsh. I know I'm way over my time. That's all right. Don't worry. Okay. I think that there could have been other things. There could have been, you know, let's give an offer of proof, come back and ask the government how long it will take them. I might have offered a half hour. What was the problem that the judge found about the jury, that they couldn't stay? It was Thanksgiving. And the trial ended on Wednesday night. And he'd asked them beforehand how much time they had to devote to the trial, and it was estimated to finish before Thanksgiving, and they all said no problem. He told them we'll finish on Thanksgiving, but you'll deliberate after that. They happened to deliberate two hours on the evening of Wednesday and decided before Thanksgiving. He told them that they would be serving after Thanksgiving? For the deliberations he did. I don't think it matters whether it's deliberations or trial. They were to be available after Thanksgiving. Right. But he had told them, I believe, that the evidence would be done before Thanksgiving, and then they'd come back to deliberate. Because we argued on Wednesday before Thanksgiving. I couldn't find this in the record. Were there some jurors who said they were unavailable after certain points in time? I don't recall that either, to be honest with you, and I didn't have what year. I don't recall any specific jurors being unavailable. I think it was just the holiday and the fear of losing jurors over the four-day weekend. But the key is the defense did shorten its case drastically because of the cross-examination. It would have taken probably a half hour to put Mr. Warren on. They would have rebutted Mr. Warren with Sal, their own expert, who they've already spent a year or more with. It's not as if they had to go find a new expert. The court could have limited it on the money laundering. The court could have done a lot of things. I agree. The question is whether not doing it was an abuse of discretion, right? It was because this was not a willful and deliberate violation, and the way it is laid out in the record is clear that it's not willful and deliberate. So the court, is it your view that the court couldn't exclude the witness except for a willful violation? Can't the court, in controlling its docket, ask for a list of witnesses in advance of trial, and when you don't produce one, say, I'm not going to allow you to bring that witness absent some sort of heightened showing? I think under Finley, it has to be a willful and deliberate tactic to gain advantage. Well, that's a good question. Winley says it is appropriate, quote, only when willful and motivated by desire to take tactical advantage. Then later in Finley, it says it's a right of decisive value. It is slightly inconsistent. I'm not quite sure what Finley means, but it has both of those statements, that it's only when willful and motivated by desire to take tactical advantage, and also only when it's of decisive value. Well, I think the court should have explored other possibilities. The court said that it was unfair to the government, but never said that defense had done anything to gain a tactical advantage. Everything was laid out in the communication and the e-mails and the timing and all that. It's obviously the harshest remedy or the harshest sanction to apply. But you're really not arguing this case is similar to Finley, even the facts of Finley, are you? I mean, in Finley, there was an expert fully disclosed. The expert fully disclosed said something no one thought he would. No one thought it would even be there, and then the court went to that. If I look at Nash, if I look at Urena, I don't see that the court is at all bound by what standard you suggest in determining that one should prohibit the party from introducing the evidence. In Nash, and I think in Urena, I'm not sure I'm looking for that case, but one of the differences, it was a defense witness that the defense was going to call in their case as affirmative evidence. Now, don't just go immediately to Nash or immediately to Urena, but I'm trying to, as Judge Reinhardt was trying to do, say, I don't think Finley really controls here. I think we've got a lot of cases. I don't think it's absolutely clear. And if it isn't absolutely clear, I can't suggest it's an abuse of discretion on the district court's position. Finley addresses, obviously, a different topic. It's a psychiatric expert or a psychologist. Who was disclosed before trial. Right, but the argument was that the prosecution was being sandbagged because they were slipping in a mental defense when they had given no notice of a diagnosis. And there is a big difference between saying my client may have an atypical personality or that kind of thing and not be able to appreciate or form the intent to defraud as opposed to he's got a delusional disorder. And that's where the government is saying, wait a second, if the doctor evaluated him months ago and he thought he had a delusional disorder, that should have been in the notice. So I think, actually, Finley is exactly on point when it comes to whether or not it was a willful... There isn't any failure here on the government's part to say what their expert was going to say. Maybe you didn't think it was enough disclosure, but there's no question, and that's why I outlined what they said. That witness did not go outside of what the government said that witness was going to say. You're not, I assume, saying that Finley is the case where the facts are similar. You're saying that Finley laid down some rules that apply here. And I don't think the case is like Finley is Judge Smith. I don't mean the facts are similar. Just a minute. Sorry. But Finley also makes some general rules that apply. And it says, because the Supreme Court has recognized that two rights are more fundamental than that of an accused to present witnesses in his own defense, courts should use particular caution in applying the drastic remedy of excluding a witness altogether. In assessing the choice of sanctions, this circuit has instructed that the decisive value of the evidence be considered. Now, what that means, I don't know. But, you know, I don't think I would limit the rules that they're talking about to a case like Finley. There are these rules. If we understood what the rules were, maybe we could apply them more intelligently. That may be. And I'm not suggesting the factual scenario is the same. What I'm suggesting is the analysis of whether or not it's a willful and deliberate discovery violation. And then, therefore, what should the sanction be? And I think there's a correlation between whether it's willful and deliberate and whether or not the sanction then is exclusion. And, you know. I think part of the question, you do it in context, was there a good reason to exclude the witness? Certainly, if the jury had been told and selected on the basis that the trial would be over before Thanksgiving, there might be a very good reason for applying that sanction. If there was no problem with Thanksgiving, that might not be a good reason, but there might be another. I assume we have to look at this all in context of how important was the testimony. That's what I assume the decisive value means. If the evidence would not have played much of a role in the outcome, then the exclusion is not something of decisive value. I don't know. I'm struggling with a problem in the midst of the argument. And I understand what the court's saying. And I think it was of a decisive value. And I think it was critical to impeach the agent. But don't we have to conclude, and I guess I asked you this before, but I'm not sure I've got an answer. Don't we have to conclude that if this evidence was admitted, you probably would have won? I've read this record, and I can't imagine saying that the judge was wrong in finding that the evidence didn't meet that standard. Because this was just somebody who was going to say the government didn't keep good records. There was a wealth of evidence in this case. And that might have undermined the credibility of the agent. It might not have. But it's not decisive, the way we're talking about it today. I've heard judgment even farther than that. And I think that's part of your problem. He says, I don't see the probative value of this expert testimony. So I think that in order to prevail, you would have to convince the court that this evidence really was not only a probative value, but worth more than that. And I think that it was. And you need to look at the other witnesses. I mean, there was a lot of evidence that Ms. Fard was not a sophisticated business person. She was disorganized. She followed the advice of accountants who referred her to attorneys. She was not hiding from anybody. She was going to all the professionals that were recommended to her. There was a lot of circumstantial evidence that she did not have an unlawful intent. Agent Sal then, at the very end of the government's case, sits down basically and tells the jury about all her interactions with Ms. Fard and how Ms. Fard didn't provide this and didn't do that. All kinds of things that indicate a consciousness of guilt. Well, Ms. Fard knew she dealt with this agent. You didn't need an expert to testify about Ms. Fard's dealings with this agent. You wanted the expert to talk about record keeping. Well, that's one example. This agent was not trained. She didn't know what a cooperating agent was supposed to do. She didn't keep records. She didn't keep copies. So when she said, oh, Ms. Fard didn't give me all the documents. Well, what documents did she not give you? Oh, well, I don't know. I didn't make copies. Well, you know, she didn't give her a receipt for gas one day. That might not be as significant as failing to give her escrow documents on a home that was sold. I mean, so there's really no way to thoughtfully cross-examine her on those issues. And so you bring in an expert to say this is the way Agent Sal should have done the investigation to preserve Ms. Fard's rights, to preserve, you know, the evidence and to be able to later cross-examine this witness. And this is how it would have been done. And I think that would have undermined Sal's credibility. And there was much evidence that Ms. Fard was careless and that she wasn't a good person. Yeah, no, I think you've made that point. So I think that Sal's, and even the accountants and the people that the government called, many of them said, oh, yeah, she did give me that document about the house or she told me this. One of the accountants didn't even put in a sale of a home. And the defense showed that she had provided those records to him. So it wasn't, there were, you know, all kinds of issues. In the mortgage aspect of it all, you had an agent that was, you know, serially refinancing with her. And we brought in witnesses to show she didn't. But we're not re-arguing the evidence here. The question is was this expert witness going to say something that would have been decisive in the trial, if you want to use Finley as an example. And all the expert witness was going to say, unless you tell me something different, was that she kept terrible records and records should have been kept in a different way. Correct? I think there were other, the policies and procedures weren't followed in the way that the investigation should have been done. Anything else the expert was going to say? You know, unfortunately, there was no further offer of proof than, I mean, Well, we're stuck with the offer of proof that you made. Right. So that's the offer of proof that you made, right? Right. Okay. But I think that even that alone, when you look at the cross-examination of Sal, you can see that she did not have training. She did not know what she was doing. You made that point. Okay. But the only other critical thing is that Sal did really tie everything together for the government. Otherwise, it was an accountant here and it was a tax, a bookkeeper here, and Sal pulled it all together and was able to give her impressions of Ms. Fart, which is strong circumstantial evidence that I think the jury relied upon. We weren't able to undermine that. Thank you. Thank you. May it please the Court, Alyssa Hart-Mahan for the United States. I want to begin by providing a little bit of additional information about the notice that the government provided of its expert, of its intent to call an expert, and this notice was provided more than a year in advance of trial. September 25? Yes, 2011. 2011. 2011, correct. Document 191 in the district court docket. But that was not the only information that the government provided regarding Sal's testimony. Of course, there was a motion in limine and there was additional information. Correct, and it was October 24, 2012 hearing where that motion in limine was argued that the government elaborated on the content of Sal's testimony and described the discovery that had been provided to the defendant, which included Sal's entire audit file, all of her notes regarding her examination of the defendant's tax returns, the calculations that she did as part of the civil audit. And, in fact, during that October 24, 2012 hearing, one of the prosecutors sort of walked the judge through the agent's calculations, saying, okay, the agent is going to discuss Schedule C of the tax return, the agent is going to discuss Schedule D. Here's what was reported on the defendant's return. Here's what my civil examination showed. So there was a lot of information provided about agent's testimony. Was there any? I want to go back to a question Judge Smith asked before. Was there anything that the agent testified about at trial that wasn't disclosed? Judge Smith asked the question, and I'm not sure your opponent could identify anything, but I want to ask you. Nothing beyond what was disclosed in advance? No. And if the court has reviewed agent's house testimony, she testifies about her civil examination, about the audit. She does testify that she was also involved in the later stage criminal investigation. However, her testimony makes clear that as soon as the case became a criminal case, as soon as it was referred to IRS criminal investigation, the civil audit stopped. She did no further work on the civil audit, and she had no further contact with the defendant after the criminal investigation began. And that was disclosed pre-trial, was it not? Well, certainly the defendant knew that she had no further contact with her because... Correct. And as Judge Smith pointed out, the government did disclose that she was part of the criminal investigation. That was not something that was concealed. We provided that as part of the expert notice. So why not, if you're the judge, say, I know this is late and I know it's probably not all that relevant, but let's let it in and let the defendant have her day in court? You said it would take a half an hour. The district court found that it would have been unfair to the government... Yes, why? ...to allow the late-breaking expert because, in his view, a continuance would be required to allow the government to prepare. Did he ask the government whether a continuance would be required? Not specifically, no, Your Honor. But we would not disagree with that. Did he ask her generally? You know, an answer not specifically. What does that mean? Did he ask the government generally but not specifically? The government had moved to exclude the expert on the ground that it was unfair for the defendant to be allowed to call this expert at the last minute. Yes, but did they say they would need a continuance? That's not in the record, Your Honor. Well, what they really were arguing is that the expert ought to be denied, that the expert ought not to testify, right? Yes. So what the district court was really doing is the district court was going down Rule 16d-2, and they were saying, Do I really have to get there? And so the district court was first thinking about, Well, what can I do which might get there? And that's why the court was talking about a continuance, correct? I'm not sure I understand. Well, 16d-2 says failure to comply. If a party fails to comply, what can the court do? And A has one, order the party permit discovery. Well, you couldn't have gone there. B, grant a continuance, or C, prohibit. And that's where the court was getting. My worry was that what the court went through, though the government didn't allow or disallow, the government's motion said, Go to C. It's done. And the court was trying to say, Is there a particular set of circumstances that I don't have to get to C? That's the way I read it. And one circumstance would be let the testimony in. Yes. One would say, Let it in. And isn't that the general rule that if it's an important testimony, you should let it in unless there's a good reason not to? Right. And I would submit that the district court's finding that it would have been unfair to the government and that a continuance was not acceptable. But that isn't the rule. There's nothing in the rule that says let it in. The rule says, Order the party to permit discovery or inspection. Correct. Grant the continuance or prohibit. So it doesn't say let it in. So, frankly, the only way you let it in is if the court, having examined it based on our case law, would suggest that it's harmless error, so let it in anyway. Right? This is a nice legal argument that Judge Smith is making to you. And I don't want to make the opposing rules. Well, I think he's made it already the other one. All I'm trying to do is find where in the rule it says let it in. I didn't find it. If I could make just a couple additional points. You want to read this because the Supreme Court has recognized that you write more fundamental language? Yeah. We're all going to chime in about our experiences. I'd like to hear about the last time you were asked to cross-examine an expert who was put on that morning and you had no previous disclosure of his testimony. I think a judge could assume that a continuance, at least of some period, was needed to figure out what he was going to say. Maybe until after the weekend. Was there any reason that there shouldn't have been a continuance until after the weekend? That's a good question. It was a proper exercise of the Court's discretion. There wasn't any reason it was a proper exercise of discretion. Well, there were the concerns about juror availability, and the Court explicitly noted those. There was a significant continuance that the jurors might not be available. Was there anything in the record that showed the jurors might not be available? Not beyond the district court's finding. What was that based on? Presumably conversations that he'd had. The juror questionnaires, I think, were not in the record. I'm not sure how much discussion of availability there was. This leads to a frustration that occurs for us. If the evidence had just gone in, because I don't think it was decisive, I don't think it's anywhere close to decisive, we wouldn't have this argument. We'd have a different one, because a defendant is supposed to make all his arguments on appeal. But because the government opposed it, we now have this problem. The government just said, boy, he's really not going to say anything. He's going to say she kept crappy records, which is exactly what defense counsel pointed out. Hold her to a half an hour, Judge. Tell her she can't have more than half an hour with this guy, and we'll be done, and it's not your fault. But it's my continual frustration with these cases. By being over-aggressive at the trial level, we end up with arguments that are really irrelevant. This witness, in my view, does not change the way the trial comes out, which is why I think your case probably is strong. So that's my frustration. And I can understand your frustration. However, the district court properly excluded this testimony, not only under Rule 16, but also under relevance grounds. And there was a reference to that in the record, that the court didn't believe that some of these areas were a proper basis for an opinion. Am I correct that the chief defense in this case was intent? Yes. In other words, there wasn't much dispute about what happened. The question is whether she intended to be laundering money while she was doing it. Yeah, and regarding whether she knowingly violated her duty to pay taxes. And I think— I was having some difficulty figuring out how to say. Unlike Finley, where the expert's testimony really went directly to guilt or innocence— And I don't think that— This wasn't going to be testimony about mental state, was it? No, and actually that was something that was mentioned specifically during the hearing regarding the motion to eliminate, the pretrial hearing. Defense counsel raised concerns that this expert, because she had contact with the defendant during the civil examination, might testify about the defendant's mental state or her demeanor. The district court made clear that she would not be allowed to testify on that ground. And her testimony, the bulk of her testimony, Agent Sowe's testimony, dealt with tax calculations, with determining what should have been reported on the tax returns, what was the income, the taxable income to the defendant. And I don't think—the defense can correct me if I'm wrong, but I don't think the defense disputed the fact that she did owe additional taxes. Well, that's what I was asking. The issue was whether she had the requisite— As I read her testimony, it was, I've gone through the tax returns, I've gone through the records, this is what's owed. And that was not a subject of much dispute. The dispute was whether or not she intentionally didn't pay her taxes or that it was a requisite mens rea. And as we noted in our brief, all of Agent Sowe's calculations were based on documents and evidence, documents and information that had already been admitted into evidence. Well, now we're down to maybe a legitimate argument, that it could be excluded on the grounds that it wasn't probative.  And that's an alternative ground supporting— But that's a different argument from the other sanction of excluding it because it's too late. If this had been critical evidence, you'd be making a different argument than that it's not probative. And not probative is one of the arguments you can make based on finling. Yes, yes. And that argument might, well, carry more weight with some judges than some other arguments. Like, after all, you're too late so it doesn't matter that you're innocent. Well, I like the characterization of my argument, but I don't agree to it. What I'm really looking at is, you know, I'm struggling between Finley and Nash and Oceana, Oriana, because it seems to me that Finley is not this type of case. Finley notice was given, and we're only talking about after notice being given and everything being done, testifying about something that no one knew you were going to testify about. Whereas the regular cases, which are not necessarily like that, which are about notice, don't seem to limit the discretion of the district judge. And I guess I want you to talk about that. Am I just out to lunch on that idea, or is that true? Because I'm trying to figure out if there's a case dead on that would suggest the judge ought to have done something more than just refuse the testimony. Don't tell judge Smith he's out to lunch. I'm not aware of a case that's, you know, where the facts are identical to the facts that we have here. As we argued in our brief, the facts of Finley are quite different from the facts here. And in fact, this court in Finley stated that it did not believe that a Rule 16 violation had occurred. So this court concluded in Finley that there had been adequate notice and then went on to discuss the probative value of the evidence, and obviously the court concluded in Finley that the evidence was essential to the defendant's case. Whereas here, you know, the evidence had... We believe that the evidence, you know, was irrelevant, could have been excluded under Rule 402 or Rule 702, in addition to also being excludable under Rule 16. And again, Urena and the other cases that we cited regarding a district court's ability to control its docket and its caseload support the district court's ability to exclude... So is there any case in the list of cases we looked at, I haven't seen one, that found an abusive discretion for excluding an expert disclosed for the first time at the end of the government's case? Not that I'm aware of. Finally, so in addition to Rule 16 and the federal rules of evidence supporting the district... Do you know of any cases in which they advised that they wanted to hire an expert and then they negotiated with the expert and the expert didn't want to do it for that amount and they finally got the amount and as soon as they got the expert to agree, they notified the court and you find a case like that? No. No. Well, that's why I'm not quite as interested in whether we're talking about a case that has the same facts as these on either side as I am in what the basic legal rules are. And, you know, I don't think there's any doubt that if the judge was correct in his assessment that the evidence wasn't probative, that you win. I don't think there's any question about that, even under Finley makes that clear. And the record demonstrates that, you know, that this expert testimony, if he had testified regarding IRS policies and procedures, would not have altered the outcome in this case. There was overwhelming evidence of the defendant's guilt of, you know, $3.5 million in real estate capital gains that were never reported, that were concealed from return preparers. This was not an accident. This was not a mistake. The evidence was strong. Agent Sow's testimony was cumulative to the other evidence that came in. So any undermining of her testimony would not have altered the outcome here. So even if this court were to find that the district court erred in excluding the expert testimony, any error was harmless. The court has no further questions. Thank you. We ask that the court to affirm. We've run you over your time, but we also allowed your opponent extra time. So we'll give you a couple of minutes if you want to rebut. I do think that this case is different than Nash and Urena. In the instance, because in those cases, one is an accountant in a tax case, the other is, I think, a doctor or a medical expert dealing with injuries. All of that would be known before trial. The defense would plan on putting that on in their defense case. And I think clearly there's more of an argument. Well, but you knew what records Agent Sow kept before trial. They were disclosed. You saw all the records. You knew what she was going to testify about. If you thought that having somebody testify... So you were put on notice of the nature of the records. Why, at that point, aren't you put on notice if you want to challenge her record-keeping, you better find somebody to do it? I think I've mischaracterized the problem, and it's not just a record-keeping problem. We were given 7 years of tax filings and investigations, thousands and thousands of pages. What it was was when she was asked about how she conducted her investigation and how she confirmed certain acts that Ms. Fard allegedly did or didn't do, there was nothing, she hadn't done anything, and there was no checks and balances. And you got to tell that to the jury, but you knew she was going to testify about her investigation. But when the government says that she was cumulative, I totally disagree, because you've got accountants and bookkeepers and people that came in, but they talked about how she brought everything in and she brought all her boxes and she gave them everything and she was confused, and they said, go to an attorney, and she went to the attorney. There was evidence that she had no unlawful intent. She was confused... There was evidence, but there was also evidence that she had unlawful intent. And an accountant doesn't necessarily know whether or not she has the basis that she says she has, and they don't necessarily ask for all the receipts and things like that. Ms. Suit, Agent Sow, was sitting with her going through, okay, what's the basis for this house that you sold? There's all these inter-family transfers. Ms. Fard, what do you understand about inter-family transfers and whether or not you need to report capital gains when it's your son or somebody else? So she added a whole aspect to this case. But your expert wasn't going to testify about that. Your expert was going to say, if she'd done the investigation right, here's what she should have done. But your expert wasn't going to say that your client lacked the intent, which was your defense in this case. Your defense in this case was that your client lacked the intent to violate the tax laws. If it were a psychiatrist, as in Finley, who was going to testify directly to that point, she couldn't form the intent because she's not competent. I'd understand that. But all your expert was going to do was precisely what you did on cross-examination and say, you kept crappy records, Ms. Sow. I don't know whether she did or not, but that's the point you made on cross-examination. And that was your proffer. Your proffer was only that the expert was going to say her record-keeping wasn't very good. Well, and that she didn't keep copies, that she made claims about... I understand that you're talking about specifics of record-keeping. Right. But isn't that what your expert was really going to say? Well... Reduce it to a sentence. Her record-keeping wasn't very good. No. It was policies and procedures that an IRS agent is trained and should follow in conducting an investigation. In keeping records. Not just keeping records, but in the entire investigation and her interaction with an individual. And your expert was not going to say, had she done a more thorough investigation, she would have discovered these things that exonerated your client. Perhaps, well... No, you didn't proffer that, so the answer is no. No, but I may have argued that in closing argument based on the fact that she didn't follow the procedures. And had she followed the procedures, she would have checked... But I'm trying to figure out what the expert... We're focusing on now whether the expert was going to have probative evidence that would have changed the result in this case. So I want to know... I've read your proffer. And we keep arguing about what you would do with it. But isn't it fair to say your expert was going to say she didn't follow policies and procedures and didn't keep good records? That is one aspect. What else was she going to say? I also talked about money laundering, but we really haven't even discussed that. But the government's asked for a proffer. They didn't just ask for exclusion. The court then went to argument and said, no need to respond, we're done here. But you made a proffer. Well, I made an oral proffer. But the rules require that if evidence is excluded, we can only consider the proffer that you made. That's Rule 104. And the proffer that you made, as I read it, and you keep arguing with me about what you might have done and what you could have done and what you should have done, but I'm just asking you about the proffer that you made. Have I accurately described the proffer that you made? I think that it's the policies and the procedures of an IRS agent. It's putting on an expert who has IRS training and background and has the authority of government experience, like Ms. Tsao did. Because otherwise he wouldn't be an expert. Well, I guess there could be tax experts that haven't worked for the IRS, but he had done her job for 20-some years. And it's the substance of his testimony. I gave you one last shot at this. The substance of his testimony was going to be that she didn't follow policies and procedures and that she kept bad records. Is there any other substance to his testimony? Well, not... Not that was proffered? No. Okay, that's all I really wanted to know. But the key to that is that would undermine her evidence of consensus of guilt. No, I understand your argument about what it would do. I'm just trying to be clear in my own mind about what he was going to say. And I think you've told me that's what your proffer that he was going to say. The other thing, Sal was still on the stand when I made this argument to the court. No, I didn't ask you that question. I asked you what he was going to say. Is the answer... I accurately described what he was going to say? Accurately, it's a general statement of what he was going to say. Like the government gave a very general statement about what Sal was going to say. This is really a yes or no question. I don't want to be impatient with you. I just want to know what he was going to say. You made a proffer. I read the proffer. I described the proffer to you. Have I inaccurately described the proffer? No, I think that... Okay, that's all I really wanted to know. Okay, is there anything else you need to say in a sentence or two? Yeah, if you look at the cross-examination of Sal, number one, it was never disclosed that she was a cooperating agent prior to trial. We never knew whether or not she had followed proper policies and procedures, and that's a fertile ground for cross-examination with an expert witness. And that's one of the areas where the defense can often undermine her conclusions, because if she didn't do what she was supposed to do, then the conclusion is not worth the words and the basis it's made up of. And so this expert would have helped us undermine the foundation for her conclusions because she wasn't following the policies and procedures. And that came to light in cross-examination. We couldn't even get out what the policies and procedures were because she didn't know them, and it became clear that she couldn't even clarify her own job duties. So it was critical to undermine her credibility and her conclusions. She was the one that sat with Ms. Fard and concluded that she didn't have things or didn't present them and didn't show up with them, but couldn't say what they were, couldn't say what she didn't bring and what she didn't show up with. You did a very good job of cross-examining her and bringing all that out. Well, and again, bringing that out by a defense attorney standing across the courtroom is much different than having an expert on the stand with 20-some years of IRS investigation. That's a good argument. I'm not sure I believe it. Some experts are boring as hell, and they don't do any good. And the cross-exam is better than the expert. Well, in some instances I agree, but I think that... No, I can't go... I mean, I heard you say that two or three times and I just sat here longer than I could. I just erupted. That's baloney. Well, no... I've seen it happen. Experts put jurors to sleep and Good Cross doesn't. But get on with that. That's all I was going to tell you. But on a final note, I will say in a tax case, when you have an IRS agent on the stand, that's a particular type of expert that may garner more... I mean, it's boring. Taxes are boring. But there's an area of expertise that individuals may not necessarily follow.  Thank you. That's exactly what I'm saying. But you've come to the end of your argument. Okay, and their expert was a government agent or a government employee, which I think carried weight with the jury as well. So, thank you. Thank you, Kass. Thank you both very much for an interesting argument.
judges: Reinhardt, Smith, Hurwitz